EAST OHIO GAS COMPANY, APPELLEE AND CROSS-APPELLANT, *v.*
LIMBACH, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *East Ohio Gas Co. v. Limbach* (1991), 61 Ohio St.3d 363.]

(No. 90–287—Submitted April 11, 1991—Decided August 14, 1991.)

*Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.,* for appellee and cross-appellant.

*Lee I. Fisher,* Attorney General, and *Richard C. Farrin,* for appellant and cross-appellee.

## I

*Per Curiam.* East Ohio in its cross-appeal asserts that the BTA erred in failing to determine whether the purchases of parts and supplies for the purchased and leased motor vehicles were excepted from taxation by R.C. 5739.01(E)(2), as used directly in the rendition of "public utility services" as defined by former R.C. 5739.01(Q), now (P); that the BTA failed to give effect to a stipulation that the numerator of the apportionment fraction used by the commissioner to determine the percentage of taxable purchases of these parts and supplies should be reduced and that the BTA erred in affirming the amount of tax assessed on these purchases; and that the matter should be remanded to the BTA for a determination of the parts and supplies issue. Before this court the Tax Commissioner conceded that the matter should be remanded to the BTA upon this issue. Accordingly, the matter is hereby reversed and remanded for such determination.

## II

The Tax Commissioner contests the exception from taxation of the purchase and lease of certain motor vehicles used by East Ohio in connection with servicing and maintaining its production, transmission, and distribution systems.

R.C. 5739.01(E) defines "retail sale" as "all sales except those in which the purpose of the consumer is: * * * (2) * * * to use or consume the thing transferred * * * directly in the rendition of a public utility service * * *."

R.C. 5739.01(Q) (now 5739.01[P]) provided:

" 'Used directly in the rendition of a public utility service' means: [1] that property which is to be incorporated into and will become a part of a consumer's production, transmission, transportation, or distribution system and which retains its classification as tangible personal property after such incorporation; [2] fuel or power used in the production, transmission, trans-

portation, or distribution; and [3] tangible personal property used in the repair and maintenance of the production, transmission, transportation or distribution system, including only such motor vehicles as are specially designed and equipped for such use."

Paragraph one of the syllabus in *Cincinnati Gas & Elec. Co. v. Kosydar* (1974), 38 Ohio St.2d 71, 67 O.O.2d 81, 310 N.E.2d 245, provides:

"Tangible personal property is 'used directly in the rendition of a public utility service' when its use conforms to one or more of the three standards set forth in R.C. 5739.01(Q)."

The three "standards" of the statute are identified above and, as apparent, the first and second standards have no application to the instant appeal. The third standard, however, is at issue.

The Tax Commissioner argues that the tangible personal property in dispute must be used directly in an exempt activity. As seen from the holding in *Cincinnati Gas & Elec., supra,* if one of the three standards identified in the relevant statute applies, the exception is available to the taxpayer.

The initial question is whether it is necessary that motor vehicles be "specially designed and equipped" for such use. Collateral questions deal with modifications to those vehicles.

The General Assembly has established that only motor vehicles which are specially designed and equipped are entitled to exception. As suggested by the Tax Commissioner, a court in interpreting a statute must give effect to the words utilized, cannot ignore words of the statute, and cannot supply words not included. *Wheeling Steel Corp. v. Porterfield* (1970), 24 Ohio St.2d 24, 53 O.O.2d 13, 263 N.E.2d 249.

The statute requires that the motor vehicles, to be excepted from taxation, be *both* specially equipped and specially designed. Nothing in the statute requires, however, that the motor vehicles be specially equipped and designed *by the vendor.* Thus, the purchaser is entitled to make the modifications. We agree with East Ohio's assertions that the purpose of the purchaser in acquiring the tangible personal property is an appropriate gauge of the use of the property. See *Carpenter v. Limbach* (1985), 17 Ohio St.3d 39, 17 OBR 32, 477 N.E.2d 216.

Since we conclude that the vehicles must be both specially designed and specially equipped to qualify for the exception and since, except for its finding relative to hatchback cars, the BTA failed to determine whether the vehicles in question were specially designed, the cause is reversed and remanded to the BTA with instructions to determine whether these vehicles were also specially designed for use in the rendition of a public utility service.

## III

The Tax Commissioner also contests the exception from taxation of the purchases of the storage tanks and pumps. In this regard, the BTA found that "[t]he tanks are underground and are covered with a concrete pad. The pumps are mounted upon and bolted to the pad." Based upon its analysis of *Pittsburgh–Des Moines Steel Co. v. Lindley* (1982), 1 Ohio St.3d 15, 1 OBR 39, 437 N.E.2d 302, the BTA decided that tanks such as those here in question fall within the definition of "real property" and are excepted from taxation. We concur. The tanks and pumps which were acquired by East Ohio pursuant to construction contracts were "structures" and, therefore, became real property, losing their characteristics as personal property, and were accordingly excepted.

For the reasons stated above, the decision of the BTA is affirmed in part and reversed in part, and the cause is remanded for further determination by the BTA.

*Decision affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.